LOUISE HAILE CASE et al., Plaintiffs, and CLIFTON ORE COMPANY, INC., Plaintiff-Appellant, Respondent, *v.* W. H. LOOMIS TALC CORPORATION, Respondent, Appellant. (Action No. 1.)

W. H. LOOMIS TALC CORPORATION, Appellant, *v.* ST. LAWRENCE COUNTY, Respondent. (Action No. 2.)

Third Department, December 29, 1942.

*Charles E. Bowers* and *Ralph Ulsh* for appellant and respondent in first action.

*Philip H. Nelson* and *Andrew J. Hanmer* for respondent and appellant in first action and appellant in second action.

*George H. Bowers* for respondent in second action.

BLISS, J. The first action is brought to vacate a tax deed conveying to the defendant the mines and minerals on 7,776 acres of forest lands in the town of Clare, St. Lawrence county. The second action was brought by the defendant in the first action against the County of St. Lawrence for repayment of the purchase money paid for the tax sale certificate and for reimbursement for taxes paid subsequent to the conveyance as alternative relief if the title conveyed to the plaintiff should be vacated in the first action.

Obviously the decision in the second action depends entirely upon the outcome of the first action and follows as a matter of course.

The issue which is determinative of these actions narrows down to a very simple one. In the year 1932 this tract of 7,776 acres of forest lands in the town of Clare, St. Lawrence county, was owned by the Emporium Forestry Company, except the mines and minerals thereon, which were owned by the estate of Fred Haile. The Forestry Company was the so-called owner of the surface and the Haile Estate of the mines and minerals. This separate ownership of the surface by one owner and the mines and minerals by another, had existed from 1899. The mines and minerals were first separately assessed on the town assessment roll to Fred Haile for 1912 with a valuation of $10,000. Ever since that date they have been separately assessed at the same value and the taxes levied thereon have been paid for each year except 1932. During the same period the tax rolls carried an assessment to the Emporium Forestry Company of the same lands covering the same acreage and included in the same boundaries, with no express exception of the separately owned mines and minerals in the years from 1912 through 1920, with a reservation of mines and minerals in the years from 1921 through 1930, and with no reservation of mines and minerals in 1931 and 1932. In each year the Emporium Forestry Company paid the taxes assessed against this property.

In 1932 the lands were assessed to the Emporium Forestry Company with no reservation of mines and minerals. In the same year the mines and minerals were assessed to Fred Haile Estate. The Haile Estate did not pay the taxes on this separate

assessment of the mines and minerals made to it. The property went to a tax sale, was bid in by the county, the tax sale certificate sold by the county to the defendant Loomis Talc Corporation and on October 21, 1936, a tax deed was executed and delivered by the county to the defendant Loomis Talc which has paid the taxes thereon ever since.

Thus there are two claimants to the mines and minerals on this large tract of forest lands, namely, the Haile Estate and its grantee The Clifton Ore Company, Inc., who are the plaintiffs in action No. 1 and the W. H. Loomis Talc Corporation, defendant in the first action and plaintiff in the second. Loomis claims through the tax sale. Clifton Ore claims the tax sale was void. This claim of illegality of the tax sale is based upon the fact that in 1932 the entire tract was assessed to the Emporium Forestry Company with no reservation of the mines and minerals, although there was also on the same tax roll a separate assessment of the mines and minerals to the Haile Estate. Clifton Ore says that when the Emporium Forestry Company paid the taxes on its assessment it was also paying on the mines and minerals because the assessment of real estate without reservation includes mines and minerals thereon.

If we were to be governed by the 1932 tax roll alone, it would appear that the plaintiff was right and that there was a double assessment of the mines and minerals, in which event a separate assessment and sale of the mines and minerals would be void. (*Dodd* v. *Boenig,* 114 Misc. 144; affd., 198 App. Div. 1007; *Middle Island Land & Water Co.* v. *Hutner,* 259 App. Div. 294.) These cases hold that where property is assessed twice and one of the assessments is paid, no valid tax sale can be had under the other unpaid assessment.

However, the tax rolls of the town of Clare from 1912 down to 1932 each contained a separate assessment of these mines and minerals to, and the taxes were paid thereon by, Fred Haile and his estate. Also, during the same period, the surface lands were assessed to the Emporium Forestry Company which paid the taxes thereon, part of the time with a separate reservation of the mines and minerals and part of the time, namely, from 1912 through 1920 and in 1931 and 1932 with no reservation of the mines and minerals. Thus we see that in the year 1931 immediately prior to 1932, the year in question under an identical situation, the Haile Estate paid the taxes on the mines and minerals. Consequently the owner of the mines and minerals was in no way misled by the 1932 assessments. They had full notice that the mines and minerals were being separately assessed just as they were separately owned and that the assess-

ment against the Emporium Forestry Co. did not include the mines and minerals although there was no express reservation of the mines and minerals made on the assessment roll for that year. Actually there was no double assessment or double payment of taxes on these mines and minerals. The Forestry Company had no reason to believe that it was paying double taxes on the mines and minerals and the Haile Estate knew otherwise. There is authority in our own department to sustain this holding. In the case of *Rose* v. *Elliott* (218 App. Div. 287) payment of a tax levied against the land was held not to pay the tax levied against a separately assessed structure on the land.

Appellant claims that the assessments for other years should not have been received in evidence. While they are not conclusive as to an assessment made in 1932, nevertheless they are some evidence, both as to value and as to ownership, and surely they show that the Haile Estate had notice of the separate assessments and that the Forestry Company's assessment was not intended to include the mines and minerals. Consequently they were admissible.

The respondent also raises the Statute of Limitations contained in sections 131, 132 and 137 of the Tax Law (Cons. Laws, ch. 60). Section 131 of the Tax Law provides that a tax conveyance shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of lands sold and all notices were regular and in accordance with all of the provisions of law and that after two years from the date of the record of such conveyance, such presumption shall be conclusive. We gave effect to this short Statute of Limitations in *Mongaup Valley Co., Inc.,* v. *Orange Rod & Gun Club, Inc.* (253 App. Div. 465; affd., 280 N. Y. 582). Under this statute the appellants are now concluded from questioning the 1932 assessment made against the mines and minerals.

The order and judgments should be affirmed with one bill of costs in one action to the respondent Loomis Talc Corporation against the appellant Clifton Ore. The appeals of the defendant in action No. 1 and plaintiff in action No. 2 from portions of the decision should be dismissed without costs.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Order and judgments affirmed with costs in one action to the respondent W. H. Loomis Talc Corporation against the appellant Clifton Ore Company, Inc.

Appeals of W. H. Loomis Talc Corporation, defendant in action No. 1, and plaintiff in action No. 2, from portions of the decision dismissed without costs.